NOT FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

06-1022

JUSTIN BOUDREAUX

VERSUS

CHESTER BOUDREAUX, ET AL.

**************
APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, DOCKET NO. 2000-76
HONORABLE WILFORD D. CARTER, DISTRICT JUDGE

**************
**SYLVIA R. COOKS**
**JUDGE**
**************

Court composed of Sylvia R. Cooks, Marc T. Amy, and James T. Genovese, Judges.

**AFFIRMED.**

**David L. Hoskins**
**Attorney at Law**
**P.O. Box 1370**
**Lake Charles, Louisiana 70602-1370**
**(337) 439-7595**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Jacqueline Marie Granger, administrix of the**
    **Succession of Justin Boudreaux**

**William M. Nolen**
**Attorney at Law**
**675 West College Street**
**Lake Charles, Louisiana 70605**
**(337) 477-6378**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
**Chester and Terry Boudreaux and**
**Three B, Inc.**

**COOKS, Judge.**

## STATEMENT OF THE CASE

This case involves a dispute among family members. Justin Boudreaux filed a lawsuit against his son, Chester, and daughter-in-law, Terry, for monies allegedly owed to him following the sale of family owned property. Chester and Terry filed a reconventional demand for damages for defamation, intentional infliction of emotional distress and abuse of right. Following trial, the jury awarded Justin the sum of $67,000, as his share in the property, and awarded nothing to Chester and his wife Terry on their reconventional demand. Chester and Terry filed this appeal asserting numerous assignments of error. For the reasons assigned below, we affirm the judgment of the trial court.

## STATEMENT OF THE FACTS

Justin Boudreaux, age seventy-seven, was the father of four children, one of whom is Chester, all born of his first wife who died in 1956. Justin began a practice of placing his property for safekeeping in the name of his son, Chester. Chester does not dispute this fact.

In March 1981, Justin, Chester and Justin's brother, Percy, incorporated a glass business, Three B d/b/a Superior Glass Company. The agreement among the family members was that each of the partners would invest $10,000 and each would own one-third of the stock in the business. However, Chester's stock certificate reflected two-thirds ownership, which represented his and Justin's share. Although Percy was the expert in the glass business, it was Justin who invested the lion's share of the money for start-up costs of the business. In addition to his initial $10,000 investment, Justin purchased the land, in Chester's name, for $16,000 and loaned the corporation $30,000 for inventory, equipment and supplies. Chester contends this loan was paid

2

in full.  Percy eventually sold his share of the stock to Chester's brother, David.

In 1989, David sold his share in the glass business to Chester for $25,000. Justin gave Chester the money to buy out David.  Chester also alleges this money was repaid.  The glass business failed and in 1995, Three B d/b/a Superior Glass Company was sold to Windshields America, Inc. for $38,000.  The building and land were leased to the company from 1995-1999 for a total amount of $43,500.  When Windshields America closed, Chester sold the land to the Eastwood United Pentecostal Church for $100,000.  Chester then withdrew $60,000 from the Three B account and placed it in a separate account in the Jeff Davis Bank.

At this point, Justin approached Chester for his share in the business and property.  When Chester refused, Justin filed a complaint with the Jeff Davis Sheriff's Department alleging misuse of corporate funds.  The Sheriff determined the matter was a civil one and took no further action on the complaint.  Justin then filed a lawsuit against his son, Chester, and Chester's wife, Terry.  Chester and Terry filed a reconventional demand alleging they were defamed and suffered damages because of the complaint Justin filed with the Sheriff's office.  Following trial on the merits, the jury awarded Justin the sum of $67,000, which was the amount he alleged was due to him from the sale of the business and land.  We affirm.

## LAW AND DISCUSSION

Chester does not dispute the material facts of this case.  Justin placed his ownership interest in the glass business and land in Chester's name and invested a significant sum of money for start-up costs for the business.  Chester and Terry obtained their living from this business. When the business and land were eventually sold,  Justin received nothing.  Chester argued at trial he had majority ownership in the business and was authorized to control the funds of the corporation. In fact, he

3

alleges the trial court erred in failing to give the following jury charge: "The owner of a majority of the shares of a corporation can ultimately control all corporate acts including the designation of officers, hiring of employees and determining the amount and means of compensating them." Justin testified he always intended for Chester to make his living from the glass business. He stated: "I was hoping that the corporation and the glass company was going to amount to something and at some time or another in the future, I may get something out of it. But mainly, I was interested in keeping my sons, I've always loved my sons, and I was interested in their well being, and wanted to see them make it in business. So I helped them." While Justin did not object to Chester's use of the income during the life of the business, after the business was sold, Justin expected to receive a portion of the proceeds. Instead, Chester continued to use the Three B account, which contained proceeds from the sale and lease of the property, to finance his venture in the horse breeding business. Invoices produced at trial indicate Chester and his wife Terry paid all the vet and feed bills with corporate money, a portion of which was owned by Justin. Chester testified the horse breeding business was not profitable and continued to drain money from the corporate account. At the time of trial, the balance remaining from the $100,000 was only $12,000.

Chester and Terry assert numerous assignments of error with regard to the jury instructions given by the trial court. Particularly, they contend the instructions given by the trial court were not a correct statement of the law with regard to defamation and led the jury to an incorrect conclusion. We have examined the jury instructions given by the trial court and find no prejudice to the Appellants. Chester and Terry produced no evidence at trial to prove they suffered any damages because of the complaint filed with the sheriff. There was a brief interview after which the Sheriff

4

concluded the matter was a civil one between family members. There were no formal charges filed, no arraignment or trial. Despite Chester's attempts to portray Justin in an unfavorable light, the jury concluded Chester was the responsible party and Justin was entitled to his portion in the family business.

Factual and credibility determinations are within the purview of the trier of fact. *Green v. K-Mart Corp.*, 03-2495 (La. 5/25/04), 874 So.2d 838. The factual findings of the jury can be set aside only if the appellate court determines from a review of the record those findings are manifestly erroneous or clearly wrong. *Rosell v. ESCO,* 549 So.2d 840 (La. 1989). In this case, we have reviewed the record and find ample support for the jury's determination that Justin was entitled to his share of the proceeds following the sale of the business and land.

## DECREE

Based on the foregoing review of the record, we affirm the judgment of the trial court. All costs of this appeal are assessed to Chester and Terry Boudreaux.

**AFFIRMED.**